### UNITED STATES v. BIRNBAUM.

District Court, S. D. New York.

Feb. 2, 1944.

James B. M. McNally and J. Gerard Cregan, both of New York City, for United States.

Sherman & Goldring, of New York City (Carl Sherman, of New York City, of counsel), for defendant.

RIFKIND, District Judge.

At the close of defendant's case, six of the nine counts of the indictment were dismissed because the evidence failed to show that the crimes charged in the indictment had been committed. Counts one, six and nine remained. The first count charged the defendant with a violation of Title 8, § 220(a), U.S.C.A., in that on March 28, 1940, in the Southern District of New York, he knowingly and wilfully possessed and used an immigration visa as a Polish quota immigrant knowing the visa to have been unlawfully obtained. The illegality attributed to the obtaining of the visa was that he had bribed an employee of the American Consulate to cause a visa to be issued to him ahead of his turn on the Polish quota waiting list.

The sixth count charged the defendant with a violation of Title 8, § 220(b), U.S.C.A., in that on December 21, 1939, at Bordeaux, France, he knowingly and wilfully offered to sell and sold an immigration visa to one not then and there entitled to receive the same. The recipient's lack of authority to receive the visa was likewise grounded on his unlawful advancement on the Polish quota waiting list.

The ninth count charged the defendant with participation in a conspiracy with a consular employee at Bordeaux, to violate Title 8, § 220, U.S.C.A., by causing visas to be issued to persons advanced ahead of their turn on the Polish and Russian quota waiting lists.

After decision was reserved on defendant's motion to dismiss, the case, was submitted to the jury under an instruction that it was unlawful to issue a quota visa to an immigrant ahead of his turn on the waiting list. The reservation of decision was founded on my uncertainty as to the correctness of that charge. The jury returned a verdict of guilty on each of the three counts.

The government concedes that the conviction cannot stand unless it is established that it was unlawful for an immigrant to obtain a quota visa ahead of his turn on the waiting list. The establishment of that proposition of law is crucial to each of the three counts. To establish this proposition the government relies on notes 161 and 162 issued by the Secretary of State, upon the recommendation of the Secretary of Labor, on August 26, 1935, to become effective on January 1, 1936, in accordance with § 24 of the Act of May 26, 1924, 8 U.S.C.A. § 222. These notes and note 163 read as follows:

Note 161. Nonpreference aliens. Section 6 of the act as amended provides that any portion of the quotas not required for the first- and second- preference groups shall be available for other quota immigrants.

The priority of nonpreference aliens is determined by the dates the applicants are registered at the consulate.

Note 162. Issuance of visas out of turn a violation of law. Under no circumstances is an applicant for a quota immigration visa to be issued a visa out of his proper turn with other registrants at the consulate, since the effect of such action would be to accord the applicant an illegal preference.

Note 163. Record of registration to be safeguarded. A system of registration must be followed at each office which will make it possible to check the basis and

correctness of the priority status of an applicant at any time either before or after the issuance of a visa. Adequate safeguards must be provided to make it impossible for the records to be improperly altered. The actual recording of registrants and the issue of notices to appear for application and examination for visa should be closely supervised by a commissioned officer. Records should be kept in cabinets or filing cases which are locked when not in use. Principal officers should make periodic inspections of the records to insure that they are being properly kept.

The record of registrations, or waiting list, must be kept in record books under the supervision of a commissioned officer. The record book should be preferably a bound volume, but if a loose-leaf volume is used it should be of a type which can be locked. A card index should be kept in conjunction with the record of registrations.

■ These notes have never been filed with the Division of the Federal Register established by U.S.C.A., Title 44, § 302, nor published in the Federal Register under § 305. The failure to file and to publish permit the inference that these notes or regulations were not intended to have "general applicability and legal effect" and were intended merely to regulate the internal administration of the consular offices by their officers, agents and employees. The text of note 163 tends to confirm that inference. The requirement that records be kept in locked cabinets can scarcely be said to be a regulation designed to have "general applicability and legal effect."

However, even if the notes as such are without legal effect, the question remains whether it is true, as note 162 declares, that the effect of issuing a visa to an immigrant out of his proper turn is to accord to him an illegal preference. The answer to that question must be found in the Immigration Act, 8 U.S.C.A. § 201 et seq. That statute is silent on the order in which ordinary quota visas may be issued. Section 206 provides for two preferred classes of immigrants. The entire quota of every nationality is made available to such preferred classes and only so much of the quota as is not required by them is open to ordinary quota immigrants. The argument is advanced that, by establishing two classes of preferences, Congress forbade the extension of any others. But that requires reading into the statute a prohibi-

tion which is far from explicit. Congressional silence may have been intended to give the State Department or consular officers a large measure of discretion in dealing with ordinary quota visas. Logically, whatever system for allocating visas is adopted by the State Department establishes a preference for those who benefit by that system. There is nothing axiomatic about chronological rotation. We must be careful not to confuse generally accepted ideas of fairness and courtesy which suggests that those who first apply shall first be served with legal commands and prohibitions. The gentleman's code is not by implication a part of the Criminal Code.

■ I have considered the possibility that notes 161 and 162 may be regarded as administrative interpretation of the statute and as such entitled to great weight in construing it. However, the facts deprive them of effect as administrative interpretation.

1. Despite the language of the note prohibiting the issuance of visas out of turn, in actual practice the bar, if applied at all, was applied to the consideration of requests for visas. The visa application which is provided by § 207 was received by the Consul only at the time of issuance.

2. The note bars issuance of visas out of turn at the consulate. It does not establish or suggest the establishment of a worldwide waiting list although applications for quota visas may be made at any American consulate the world over. If the issuance of a visa out of turn constitutes a preference not authorized by statute then the issuance of a visa to an applicant at one consulate before a visa is issued to an earlier applicant at another consulate would constitute an unlawful practice. The system employed by the State Department for the allocation of visas renders that kind of preference a frequent possibility. Mr. Gannett, a vice-consul of long experience, testified that it was not the practice to issue visas in strict chronological rotation. Manifestly the practice of the consuls was not in accord with the construction of the statute suggested by the notes.

3. Mr. Gannett further testified that the wife and child of an applicant for a quota visa were, in practice, given visas ahead of their turn by extending to them the same place on the waiting list as that possessed by the head of the family. No such preference is accorded by statute and that practice, therefore, is likewise incon-

sistent with the presently claimed construction of the statute.

Although it has no direct bearing on the ground of this decision, I should state parenthetically that I have not been persuaded of the integrity of the waiting list maintained at the American Consulate in Paris. It contains internal evidence which renders it highly improbable that it truly constituted a chronological list of all who indicated a desire to emigrate to the United States and sought quota visas to accomplish their purpose.

■ The indictment does not charge and the evidence does not show that the visa used by the defendant and the visas issued to other immigrants through his intervention preferred their holders over members of the classes entitled to a preference under the statute. It follows that the motion to dismiss the first and ninth counts of the indictment must be granted because the facts alleged do not constitute the crime charged and the motion to dismiss the sixth count must be granted for failure of proof.